# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

---

KATHLEEN WATSON,
      Plaintiff

vs                             Case No. C-1-04-283
                                   (Hogan, M.J.)

THE CITY OF MASON,
      Defendant

---

## ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 13), Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 17), and Defendant's Reply thereto (Doc. 20). On September 2, 2004, the parties consented, pursuant to 28 U.S.C. § 636(c), to final disposition of this case by the undersigned United States Magistrate Judge. (Doc. 8).

## BACKGROUND

Plaintiff brings this action arising from visits she made to the City of Mason's former Municipal Building ("Municipal Building") in March and April of 2002.[1] Plaintiff suffers from Meniere's Disease, a balance disorder, as well as impaired vision and hearing. (Doc. 1, Complaint at ¶ 2). Plaintiff's symptoms include severe dizziness, balance problems and vertigo. (Id.; Watson Dep. at 107-108). As a result of her condition, Plaintiff has been advised by her doctor to avoid stairs. (Watson Dep. at 47-48, 129-131). Plaintiff was summoned to appear for a hearing on theft charges at the Mason Municipal Court the morning of March 12, 2002. (Deposition

---

[1] The Municipal Court for the City is no longer located in the former Municipal Building, but has since moved to the City's new courthouse.

of Kathleen Watson, at 28-29).  The Mason Municipal Building, built by the City of Mason in 1939, had no elevators, but rather, a set of staircases leading to the second floor.  At the time Plaintiff was summoned to appear, court was held on the second floor of the Municipal Building. (Affidavit of Jerry McClung at ¶2; Complaint at ¶ 6). However, according to Defendant, in situations where the lack of an elevator made access to the second floor difficult for persons with disabilities, the court, upon request, would move its proceedings downstairs.  (McClung Aff. at ¶2).  For this reason, the court's summonses notified litigants that the courtroom was located on the second floor with no elevator access, and that those with special needs should contact the court for accommodation.  (Watson Dep. at 56-57, 60, Ex. 4; Doc. 13, Ex. C, copies of a summons sent to Plaintiff).  Defendant asserts that, on occasions when persons requested accommodation, proceedings were held on the first floor. (McClung Aff. at ¶2).

However, Plaintiff did not contact the court to request accommodation. (Watson Dep. at 146-48).  Instead, Plaintiff appeared on the morning of March 12, 2002, and upon arriving at the Municipal Building, walked up the stairs and spoke to the bailiff.  (Watson Dep. at 28-30).  Plaintiff informed the bailiff that she had a hearing impairment and requested that she be notified when her name was called on the docket.  (Id. at 29). Plaintiff remained in the courtroom as the docket proceeded but did not hear her name called.  (Id. at 31-33).  Around noon, Plaintiff informed the judge that she had been in the courtroom the entire morning and was told that her name had been called but that she had not heard the call.  (Id. at 32).  The judge then allowed Plaintiff to enter her plea. (Id. at 34).  As Plaintiff was unrepresented, the judge suggested that she obtain an attorney and arranged for Plaintiff to speak to an Mr. Doug Stouder.  (Id.).  However, Mr. Stouder was at lunch at the time so Plaintiff could not speak to him until after lunch.  (Id.).  While she was waiting to speak to Mr. Stouder, Plaintiff was not permitted to leave the court because criminal charges were pending against her and she was, therefore, required to wait in the courtroom until Mr. Stouder returned from lunch.  (Id. at 39-42).[2]  During this time, Plaintiff apparently discussed with a court clerk her disability in detail.  (Affidavit of Kathleen Watson at

---

[2]  Plaintiff was told that prior that day, a criminal defendant has run out of the courtroom without authorization and fled the premises.  As a result, court officers were guarding against further "escapes" by not allowing defendants to leave the premises prior to finalizing their charges.  (Watson Dep. at 40-41).

¶ 12).[3]  Plaintiff subsequently retained Mr. Stouder to represent her.  (Id. at 43).

On April 23, 2002, Plaintiff again appeared at the Municipal Building for another hearing.  (Watson Dep. at 59-60).  Again, the summons which Plaintiff received advised that "[t]he court is located on the 2nd floor with no elevator available. Please notify the Court in advance for special disability needs."  (Id. at 60; Doc. 13, Ex. C).  Neither Plaintiff nor her attorney contacted the court to notify court personnel of any difficulties with negotiating the stairs to the second floor courtroom.  (Id. at 147).  Plaintiff walked up the stairs without incident, attended her hearing and then went into the hallway towards the clerk's office to pay her fees. (Id. at 61-63).  She subsequently began to feel nauseated and dizzy.  (Id. at 64).  After informing the clerks that she was feeling ill and about to be sick, Plaintiff went down the stairs to the restroom located on the first floor.  (Id. at 66-67).  After vomiting several times, Plaintiff attempted to climb the stairs and return to the hallway.  (Complaint, at ¶ 17; Watson Dep. at 67).  At this time Plaintiff was still suffering from dizziness.  (Id.). At the top of the staircase, Plaintiff lost her balance and fell backwards, causing her to sustain injuries for which she presently seeks damages.  (Watson Dep. at 76-78).

On April 23, 2004, Plaintiff filed a Complaint alleging discrimination based upon disability in violation of Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131, et. seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 791, et. seq.  (Doc. 1).

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.

---

[3] As will be discussed later in this decision, Plaintiff's affidavit does not comply with the Federal Rules of Civil Procedure, nor the Court's local rules because it is unsigned and unnotarized.  As such, it cannot be used to support facts asserted by Plaintiff which are in dispute.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff's Affidavits Are Improper under Fed. R. Civ. P. 56(e)

Initially, the Court addresses Plaintiff's use of unsigned, unsworn affidavits in

4

support of her argument against summary judgment.  In support of her arguments on summary judgment, Plaintiff submits the affidavits of former Municipal Court David Judge Batsche, Tony Calise, former Chief of Probation and security officer for the Mason Municipal Court[4] nor notarized and her own.  The affidavits are neither signed[4] nor notarized in accordance with the Federal Rule of Civil Procedure 56(e).  As such, the affidavits do not constitute proper Rule 56 evidence and cannot be considered by the Court.[5] *Nassif Insurance Agency, Inc. v. Civic Property and Casualty Co.,* No. 03-2618, 2005 WL 712578 at *3 (6th Cir. March 30, 2005); *see also Wright v. Asset Acceptance Corp.,* No. C-3-97-375, 2000 WL 33216031 at *5 (S.D. Ohio Jan. 3, 2000).

<u>Summary Judgment is Granted in Defendant's Favor
With Respect to Count II of Plaintiff's Complaint</u>

Count II of Plaintiff's Complaint alleges that the City violated the Rehabilitation Act.  This claim fails as a matter of law because the City's Municipal Court is not implicated by the Rehabilitation Act.  The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, governs handicap discrimination claims.  Section 794 of the Act provides in pertinent part that:

> No otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794.  Plaintiff has not alleged that the Mason Municipal Court is a recipient of federal funds.  However, Defendant has provided the sworn statement of

---

[4] Pursuant to the Court's Electronic Filing Policies and Procedures Manual, "[i]f an original document requires the signature of a non-attorney, the filing party or the Clerk's Office shall scan the original document, then electronically file it on the System."  See ELECTRONIC FILING POLICIES AND PROCEDURES MANUAL FOR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, Rule C, Signatures.  Plaintiff's affidavits contain typed signatures rather than the required actual signatures of the affiants.

[5] Although unsworn affidavits are permissible under 28 U.S.C. § 1746, the affidavit must be subscribed to as true under penalty of perjury.  28 U.S.C. § 1746; *Bonds v. Cox,* 20 F.3d 697, 702 (6th Cir, 1994).  Plaintiff's affidavits do not contain such a statement.

the City's Finance Director stating that the Mason Municipal Court has not received federal funding for the times relevant to this action.  (Doc. 13, Ex. F, Affidavit of Jennifer Heft, at ¶ 2, attached).  As such, the Rehabilitation Act is inapplicable and Defendant is entitled to summary judgment in its favor with respect to Count II of the Complaint.

<u>Summary Judgment is Granted With Respect<br/>to Count I of Plaintiff's Complaint</u>

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To make out a prima facie case under Title II of the ADA, a plaintiff must establish that (1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability. *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003); *see also Kaltenberger v. Ohio College of Podiatric Med*., 162 F.3d 432, 435 (6th Cir.1998); *Burns v. City of Columbus*, 91 F.3d 836, 841 (6th Cir.1996) (setting forth the prima facie case under the Rehabilitation Act); *Doe v. University of Maryland Med. Sys. Corp*., 50 F.3d 1261, 1265 (4th Cir.1995) (finding that in order to establish disability discrimination under Title II of the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability).

The ADA seeks to eliminate disability discrimination on three fronts: employment (Title I, 42 U.S.C. §§ 12111-12117); public services offered by public agencies (Title II, 42 U.S.C. §§ 12131-12165); and public services and accommodations offered by private entities (Title III, 42 U.S.C. §§ 12131-12165). Congress further granted authority to the Department of Justice to implement regulations pertaining to Title II.  42 U.S.C. §12134; *see Sutton v. United Air Lines, Inc*., 527 U.S. 471, 478-79 (1999).

Plaintiff in this case seeks relief under Title II, which defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for receipt of services or the participation in programs or

6

activities provided by a public entity." 42 U.S.C. § 12131.  The ADA's prohibition of discrimination in services, programs, or activities "encompasses virtually everything a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir.1998).  "Public entity" includes "any state or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A) & (B).

Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination under the ADA because she has failed to prove that she suffered any damages as a result of Defendant's failure to provide assisted hearing devices.  Plaintiff argues that she could not adequately hear the court proceedings and was, therefore, denied full participation in her court proceedings.  She contends that this is sufficient to establish a violation of the ADA and that it is not necessary for her to show that she received a less favorable result as a consequence of not receiving the accommodation.   We disagree.   While showing that she received a less favorable result may not be the sole means of establishing damages, Plaintiff must, nonetheless, show that she suffered some discernible injury as a result of Defendant's failure to provide her with an assisted hearing device in order to establish that she was excluded from participation in the court proceedings.  *See Rosen v. Montgomery County, Maryland*, 121 F.3d 154, 158 (4th Cir. 1997).[6]  Plaintiff has failed to make such a showing.  Although certainly delayed, Plaintiff was nonetheless granted access to court procedures and was permitted to answer the charges brought against her.  Plaintiff's case was heard, the court assisted Plaintiff in finding counsel, and the charges were ultimately dropped.  At most, Plaintiff suffered inconvenience due to Defendant's failure to provide her with an assisted hearing device.  We find that such is insufficient to establish a discernible injury under the ADA.  Accordingly, Plaintiff has failed to establish a prima facie case with respect to Defendant's failure to provide assisted hearing devices.

Because we find that Plaintiff has failed to establish a prima facie case with respect to Defendant's failure to provide assisted hearing devices, we need not address the parties' arguments with respect to whether any part of this claim is time barred pursuant to the applicable statute of limitations.

---

[6] We do not agree with Plaintiff's argument that the holding of *Rosen* should be distinguished upon its facts.  Although *Rosen* concerned an arrest procedure, the Court specifically based its decision on "an even more fundamental infirmity: the lack of any discernable injury." 121 F.3d at 158.

Defendant argues also that Plaintiff cannot establish a prima facie case of discrimination under Title II of the ADA because she cannot show that she was denied accommodation for her disability.  Defendant contends that Plaintiff did not notify court employees that her condition made climbing stairs dangerous and thus, the City was not given the opportunity to move Plaintiff's court proceedings to the first floor as was its normal custom.  Plaintiff counters, through the improper affidavit of Tony Calise, that on some occasions, a room was available on the first floor of the building in which to hold court, but frequently that room was unavailable.  Assuming Mr. Calise's affidavit was admissible, such argument is irrelevant as we find no evidence that Plaintiff notified court personnel that her condition prevented her from climbing stairs and that an accommodation was therefore needed.

Regulations promulgated to implement the ADA's protections provide that  a public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance.  28 C.F.R. § 35.150(b).  Section 35.150(b) states that "[a] public entity may comply with the requirements of this section through such means as . . . reassignment of services to accessible buildings, . . . delivery of services at alternative accessible sites, . . . or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(b)(1).  Whether or not Defendant consistently held court proceedings on the first floor in situations where disabled individuals requested such is irrelevant to Plaintiff's present claims because the fact remains that Plaintiff did not make the need for such accommodation clear to Defendant.  The initial burden of requesting an accommodation under the ADA rests with Plaintiff.  *Gantt v. Wilson Sporting Goods Company*, 143 F.3d 1042, 1046-47, n. 4 (6th Cir. 1998)("It is well settled in cases brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., the precursor to the ADA, that reasonable accommodation is not at issue if the plaintiff has never requested accommodations.") (citing *Lue v. Moore,* 43 F.3d 1203, 1206 (8th Cir. 1994); *Wood v. President of Spring Hill College*, 978 F.2d 1214, 1222 (11th Cir. 1992)).  While Plaintiff may have generally discussed her disability with court personnel, she did not inform anyone with the City that she  had problems navigating stairs as a result of her disability. (Watson Dep. at 146-47).  As there is no evidence in the record that Plaintiff made a request for accommodation, Plaintiff has failed to create an issue of fact as to whether Defendant failed to provide a reasonable accommodation for her disability.  *Gantt,* 143 F.3d at 1047.  Therefore, Defendant is entitled to summary judgment in its favor with respect to this issue under Count I of Plaintiff's Complaint.

8

Additionally, in Count I of her Complaint, Plaintiff contends that Defendant violated the ADA by failing to make, and implement, a self evaluation of its current services, policies, and practices, and also failed to make the self-evaluation available to the public.  (Compl. at ¶¶ 27-28).  Plaintiff further argues in her opposing memorandum that Defendant failed to implement a transition plan.  Defendant counters that the City performed an evaluation and prepared a plan regarding such in 1993.  (*See* Doc. 13, Ex. D, Affidavit of William Casler at ¶ 3, attached).  Defendant further argues that, because no private right of action exists to enforce the self-evaluation and transition plans requirements set forth in Title II of the ADA, Plaintiff's claim fails as a matter of law.  We agree.  The Sixth Circuit has stated that, "[w]hile failing to provide curb cuts or other accommodations in the course of altering city streets and sidewalks in violation of [28 C.F.R.] § 35.151 denies the disabled meaningful access to public services by perpetuating architectural barriers that impede such access, failing to develop a transition plan in violation of § 35.150(d) does not in and of itself similarly hinder the disabled." *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 913-14 (6th Cir. 2004).  As such,  the court held that § 35.150(d) is not enforceable under Title II's private cause of action.  *Id*. at 914(*citing Alexander v. Sandoval*, 532 U.S. 275 (2001); *Deck v. City of Toledo*, 76 F. Supp.2d 816, 823 (N.D. Ohio 1999)("[T]here is no private right of action to enforce the self-evaluation and transition plan requirements set forth in the regulations accompanying Title II")).  Accordingly, Defendant is entitled to summary judgment as a matter of law with respect to Plaintiff's claim in Count I that the Defendant violated the ADA by failing to make, and implement, a self evaluation of its current services, policies, and practices, and also failed to make the self-evaluation available to the public.[7]

Finally, Defendant argues that, even if a violation of the ADA had occurred, Plaintiff's claims fail because she cannot establish that the City intentionally violated the ADA.  Because the former Municipal Building is now closed, Plaintiff's only possible remedy is monetary damages.  However, "compensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *see also The Ability Center of Greater Toledo v. City of Sandusky*, 133 F. Supp.2d 589, 593 (N.D.Ohio Feb. 16, 2001).  Additionally, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies

---

[7] Plaintiff offers no argument with respect to her claim that Defendant failed to make the self-evaluation plan available to the public.  As such she has waived any argument with respect to this claim.

will likely result in a violation of federally protected rights." *Center v. City of West Carrollton*, 227 F. Supp.2d 863, 871 (S.D. Ohio Sept. 27, 2002)(quoting *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999)). Aside from Plaintiff's failure to specifically allege intentional discrimination in her Complaint[8], Plaintiff has offered no evidence in support of her argument that the Defendant intentionally discriminated against her on the basis of her disability. Plaintiff argues that the City's failure to "install an elevator, or to make any meaningful accommodation shows a "callous indifference" to rights of disabled persons." However, as discussed *supra* at p. 8, the City was not required to install an elevator to conform with the ADA's requirements. Plaintiff attempts to establish deliberate indifference through the affidavit of Judge Batsche. However, as discussed previously at p. 5, Judge Batsche's affidavit does not constitute proper evidence under Rule 56(e) and therefore, cannot be considered as evidence in support of Plaintiff's argument. As a result, Plaintiff has failed to provide evidence in support of her argument that Defendant intentionally discriminated against her on the basis of her disability. Accordingly, Plaintiff's claims for compensatory and punitive damages fail as a matter of law.[9]

For the reasons stated above, we find that Defendant is entitled to summary judgment in its favor and Plaintiff's Complaint should be dismissed.

---

[8] Plaintiff's Complaint specifically asserts that, "as a result of Defendant's negligence, Plaintiff has suffered great injuries . . . ." (*See* Doc. 1, Complaint at ¶21).

[9] Because Plaintiff has not disputed Defendant's argument that punitive damages are not available for her claims, she has waived argument with respect to such and her claim for punitive damages is, therefore, dismissed.

## IT IS THEREFORE ORDERED THAT:


1)      Defendant's Motion for Summary Judgment (Doc. 13) be GRANTED
        and Plaintiff's Complaint be DISMISSED.

2)      This case be TERMINATED on the Court's docket.



IT IS SO ORDERED.




Date:   11/8/2005              s/Timothy S. Hogan_____
                              Timothy S. Hogan
                              United States Magistrate Judge










J:\SMITHLE\SUMJUDG\Watson.msj.wpd